*Southern District*

No. 4127

**JANIS V. GAIDE**

v.

**CHARLES TUFANKJIAN**

and

**BRIDGEWATER MOTOR SALES, INC., ET TR.**

32

*Present:* Nash, C.J., Cox, Murphy, J.J.

Case tried to *Horrocks, J.* in the Third District Court of Bristol, No. 4127

*Murphy, J.* This is an action of contract and tort to recover for breach of contract or for deceit. The answer is a general denial, payment and denial of entering into any contract with the plaintiff.

The court found for the plaintiff in the sum of $619.

*At the trial there was evidence tending to show that* the plaintiff on or about January 14, 1965, went to the defendant's garage and informed them that he wanted to purchase a Cutlass Sport Coupe with power brakes, power steering, radio and heater. At that time, the plaintiff owned a 1960 Chevrolet. The car he wanted was not available and after some talk, the plaintiff agreed to buy an Oldsmobile 442

Model. The defendant informed him that this was the same size automobile as the Cutlass, but that it had more power and other extra features. The defendant gave the plaintiff a slip at that time which read as follows: "Will trade 442 for Cutlass Hd. Coupe at any time in a period of 60 days from this date. Bridgewater Motor Sales, January 15, 1965". Thereupon, the plaintiff paid the defendant $2,375 in cash and was allowed $1,019 for his 1960 Chevrolet. He then took the Oldsmobile 442.

Shortly thereafter, the plaintiff requested the defendant on two or three occasions to make the trade, but he did not get any satisfaction and was never able to obtain the Cutlass by trade or otherwise.

There was evidence from the plaintiff that the fair market value of the 442 Oldsmobile on March 15, 1965 was $2,375. There was evidence from the defendant that the fair market value of this car on that same date was "exactly what the car had been sold for by the defendant to the plaintiff".

Bridgewater Motor Sales, Inc. was joined as a party defendant by agreement.

The court found for the plaintiff in the sum of $619.

The defendant filed six requests for rulings, all of which were denied by the court.

The court made the following special findings: "I find that on January 14, 1965 the plaintiff went to the defendant's car agency

in Bridgewater to buy an Oldsmobile Cutlass Sport Coupe. The price of the car quoted by the defendant was $2,100 and the Plaintiff's 1960 Chevrolet. The allowance for the Chevrolet was $1,019, making the total quoted price $3,119. The defendant told the plaintiff it would take two or three weeks to get this car, and he took the plaintiff from Bridgewater to Brockton to see a 442 Model which costs $225 more. This model had bucket seats and more horsepower and was not exactly what the plaintiff desired. The defendant, however, met with the plaintiff on January 15, 1965 and convinced him to take the 442 with the understanding that if he was not satisfied with it, he would exchange it for a Cutlass in sixty days and give him back the extra $225. Although it is hard for the court to believe that the defendant would sell a new car on this basis, the defendant did in fact give a pink slip of paper to the plaintiff which stated, ''Will trade 442 for Cutlass Hd. Coupe at any time in a period of sixty days from this date. Bridgewater Motor Sales, January 15, 1965''. Upon receipt of this paper, the plaintiff traded in his car and paid $2,375 in cash.

"The plaintiff then on several occasions tried to get the defendant to take back the No. 442 and give him a Cutlass hard top Coupe, but the defendant refused.

''I find that the defendant did so agree to make this exchange as part of his contract,

and that the fair value of the 442, sixty days after the sale was $2,500, and that a fair price for a new 1965 Oldsmobile Cutlass hard top was $3,119. I find that in order for the plaintiff to obtain the car he wanted, it would have cost him $619. I so find for the plaintiff in that amount.''

The defendant claims to be aggrieved by the denial of his requests for rulings.

■ The judge was right. The plaintiff is entitled to be put in status quo. He is entitled to have the car he wanted in the first place, the Cutlass. In order to obtain this car, since the defendant wouldn't trade, the plaintiff would have to turn in the 442, which the judge found was worth $2,500 and pay the $619 difference, making a total of $3,119.

We are not required to examine the motives of the defendant in making such a trade, suffice it to say that the judge found he had agreed to make such an exchange as part of the contract.

■ A judge's general and special findings import a finding of all the subsidiary facts and the drawing of all rational inferences essential to that conclusion. Such findings must be sustained unless plainly wrong. *Moss* v. *Old Colony Trust Company*, 246 Mass. 139 and cases cited. *Hall* v. *Creditors National Clearing House*, 289 Mass. 437.

On the question of damages—since the garage let him have the car for 60 days—its value

was depreciated to the extent of that usage, which for all practical purposes amounts to a year's depreciation. The judge took this factor into consideration when he arrived at the fair value and properly so. Nothing further need be said.

The judge made ample special findings to justify the denial of the defendant's requests.

There being no prejudicial error, **an order should be entered dismissing the report.**

EDWARD H. STEVENS

of Brockton for the Defendant